# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| MARQUEZ THOMAS, | ) | CASE NO. 4:23-cv-2286 |
| | ) | |
| | ) | |
| PLAINTIFF, | ) | JUDGE SARA LIOI |
| | ) | |
| vs. | ) | |
| | ) | **MEMORANDUM OPINION** |
| ANTHONY TRAFICANTI, et al., | ) | **AND ORDER** |
| | ) | |
| | ) | |
| DEFENDANTS. | ) | |

*Pro se* plaintiff Marquez Thomas ("Thomas") filed this action as a state pretrial detainee to challenge the conditions of his confinement in the Mahoning County Justice Center ("MCJC"). (Doc. No. 1 (Complaint).) He brings this action under 42 U.S.C. § 1983 against the Mahoning County Commissioners, the Mahoning County Sheriff, the MCJC Warden and Assistant Warden, and four MCJC Deputies. (*Id.* at 1.)[1] Thomas brings claims against the defendants in their official and individual capacities for violation of his First and Fourteenth Amendment rights. (*See id.* at 4.) He seeks monetary relief in the amount of $1,500,000.00. (*Id.* at 9–10.) For the reasons set forth herein, Thomas's complaint is dismissed pursuant to 28 U.S.C. § 1915.

## I.     BACKGROUND

Thomas has been incarcerated in the MCJC awaiting trial on charges of aggravated murder since December 30, 2021. *See Ohio v. Thomas*, No. 2022-cr-21 (Mahoning Cnty. Ct. Comm. Pl. Mar. 14, 2024). He pled guilty to reduced charges of involuntary manslaughter and felonious assault on March 4, 2024, and was sentenced on March 14, 2024, to an aggregate term of

---

[1] All page number references herein are to the consecutive page numbers applied to each individual document by the Court's electronic docketing system.

incarceration of eighteen to twenty-three and a half years in prison. (*Id.*) The claims asserted in his complaint pertain to conditions of confinement in the MCJC during the time in which he was a pretrial detainee. (Doc. No. 1, at 4–8.) He divides these conditions into five categories: (1) Maintenance Issues; (2) Lack of Staff and Training; (3) Lack of Outdoor Recreation; (4) Health Hazards; and (5) Overcrowding. (*Id.*)

### A. Maintenance Issues

Thomas lists three issues under the category of maintenance. First, he states several of the intercoms used by inmates in his unit are not working properly. (Doc. No. 1, at 4.) Second, he states that the MCJC has held only one fire drill since 2001 and inmates were not moved during the drill. (*Id.* at 4–5.) Third, he claims the toilets do not always flush properly. (*Id.* at 9.)

### B. Lack of Staff and Staff Training

Thomas lists three issues that concern staff. First, he states that the County failed to hire an adequate number of deputies to ensure that all posts are staffed throughout the facility twenty-four hours per day, seven days a week. (Doc. No 1, at 5.) Second, he claims staff shortages have caused inmates to be locked in their cells from 6:00 p.m. until 7:45 a.m. the following day. (*Id.*) Third, he claims Deputy Ibrahim engaged in retaliatory tactics for writing kites. (*Id.*) He gives examples of retaliation such as name-calling, numerous cell searches, and charging him with a disciplinary infraction for having too many uniforms when the medical department authorized him to have extra uniforms. (*Id.* at 5–6.) He states that Sergeant Graham apologized for "the lies that deputy Ibrahim told about the plaintiff." (*Id.* at 6.)

### C. No Outdoor Recreation

Thomas claims inmates in the Mahoning County Justice Center are not offered outside recreation. (Doc. No. 1, at 6.) He states that certain structural changes would have to made to the

fences to allow for outdoor recreation. (*Id.*) He contends that he has not been provided with outdoor recreation since he arrived at the justice center. (*Id.*)

### D.  Health Hazards

Thomas alleges that the defendants have failed to ensure the cleanliness of the showers and laundry facilities. (Doc. No. 1, at 7.)   He contends that staff members water down cleaning products, which causes the products to lose effectiveness. (*Id.*) He states that this results in the buildup of mold in the showers and washing machines. (*Id.*) Thomas also alleges that the facility does not properly filter the water, causing a build up of calcium and chemicals in the showers, toilets, and sinks. (*Id.*) He asserts that prolonged exposure to these chemicals could cause illness. (*Id.*)

### E.  Overcrowding

Thomas states, without explanation, that the MCJC has experienced "an unusually high number of inmate-on-inmate assaults, inmate on staff assaults[,] and miscellaneous incidents of violence . . . ." (Doc. No. 1, at 8.) He states that a female staff member was raped. (*Id.* at 9.) He contends these incidents are a direct result of overcrowding and insufficient staffing and training. (*Id.* at 8.)

## II.    STANDARD OF REVIEW

Although pro se pleadings are liberally construed, *Boag v. MacDougall*, 454 U.S. 364, 365, 102 S. Ct. 700, 70 L. Ed. 2d 551 (1982) (per curiam); *Haines v. Kerner*, 404 U.S. 519, 520, 92 S. Ct. 594, 30 L. Ed. 2d 652 (1972), the Court is required to dismiss an *in forma pauperis* action under 28 U.S.C. § 1915(e) if it fails to state a claim upon which relief can be granted, or if it lacks an arguable basis in law or fact. *Neitzke v. Williams*, 490 U.S. 319, 328, 109 S. Ct. 1827, 104 L. Ed. 2d 338 (1989); *Lawler v. Marshall*, 898 F.2d 1196, 1198 (6th Cir. 1990). A claim lacks an

arguable basis in law or fact when it is premised on an indisputably meritless legal theory or when the factual contentions are clearly baseless. *Neitzke,* 490 U.S. at 327. A cause of action fails to state a claim upon which relief may be granted when it lacks plausibility in the complaint. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 564, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007).

A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (citing *Twombly*, 550 U.S. at 556). Plausibility "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully.'" *Id.* "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged— but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)) (second alteration in original). In such a case, the plaintiff has not "nudged [his] claims across the line from conceivable to plausible, [and the] complaint must be dismissed." *Twombly*, 550 U.S. at 570; *see Iqbal*, 556 U.S. at 683.

A complaint need not set down in detail all the particulars of a plaintiff's claim. However, "Rule 8 . . . does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 678–79 (stating that this standard requires "more than an unadorned, the-defendant-unlawfully-harmed-me accusation"). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678 (citing *Twombly*, 550 U.S. at 555). The complaint "must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under *some* viable legal theory." *Scheid v. Fanny Farmer Candy Shops, Inc*., 859 F.2d 434, 436 (6th Cir. 1988) (internal quotations marks omitted) (emphasis in original), *abrogated on other grounds by Buckhannon Bd.*

4

*& Care Home, Inc. v. W. Va. Dep't of Health & Hum. Res.*, 532 U.S. 598, 121 S. Ct. 1835, 149 L. Ed. 2d 855 (2001).

### III.   ANALYSIS

Thomas has brought claims both for injunctive relief as to his conditions of confinement and for damages against employees at the MCJC. In seeking damages, Thomas brings claims against multiple defendants in both their individual and official capacities. The Court will first consider Thomas's claims against the defendants in their individual and official capacities before proceeding to his claims regarding his conditions of confinement.

#### A.  Individual and Official Capacity

Thomas brings his claims against the defendants in their individual capacities and their official capacities. Individual capacity claims seek to hold a defendant personally liable for damages. These claims must be based on the defendant's own actions.  A defendant cannot be held liable simply because he or she was charged with overseeing a subordinate who may have violated the plaintiff's constitutional rights. *Peatross v. City of Memphis*, 818 F.3d 233, 241 (6th Cir. 2016) (citing *Gregory v. City of Louisville*, 444 F.3d 725, 751 (6th Cir. 2006)). Instead, individual liability requires some "active unconstitutional behavior" on the part of the defendant. *Id.* at 241 (quoting *Bass v. Robinson*, 167 F.3d 1041, 1048 (6th Cir. 1999)). Consequently, unless the plaintiff affirmatively pleads the direct involvement of the defendant in the allegedly unconstitutional action, the complaint fails to state a claim against that defendant and dismissal is warranted. *See Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984).

Conversely, claims asserted against defendants in their official capacity are claims directed at the political entity they serve, not the individual defendant. In this case, the claims asserted against defendants in their official capacity are claims directed at Mahoning County. *Will v.*

5

*Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989). These claims must be based on constitutional violations that occurred as the result of the County's own official policy enacted by its lawmakers, *Powers v. Hamilton Cnty. Pub. Def. Comm'n*, 501 F.3d 592, 607 (6th Cir. 2007) (citing *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978)), or by the County's own custom which, while not officially memorialized in an ordinance, is so permanent and well-settled that it carries the force of law. *Monell*, 436 U.S. at 691.

### 1. Individual Capacity

Thomas fails to state a claim against any of the defendants in their individual capacities. He identifies only two defendants as being personally involved in the actions described in the complaint: Deputy Ibrahim and Sargent Graham. (Doc. No. 1, at 5–6.) He does not reference any action of the remaining defendants in his complaint. Instead, Thomas simply lists the job responsibilities of defendants Traficanti, Ditzler, Rimedio-Righetti, Greene, Cappibianca, D'angelo, Kountz, and Kephart. (*Id.* at 2–3.) This is not sufficient grounds to maintain an action against these defendants in their individual capacities. *Bellamy*, 729 F.2d at 421. Because Thomas has not alleged facts to suggest that defendants Traficanti, Ditzler, Rimedio-Righetti, Greene, Cappibianca, D'angelo, Kountz, or Kephart personally participated in any of the actions giving rise to this Complaint, the claims asserted against them in their individual capacities are dismissed.

The complaint provides little detail about the allegedly unconstitutional actions of Deputy Ibrahim and Sargent Graham. Thomas alleges Deputy Ibrahim "engaged in retaliatory tactics" such as "name calling of sorts," numerous cell searches, and placing him in segregation for having too many uniforms. (Doc. No. 1, at 5.) He alleges that Sergeant Graham apologized "for the lies that deputy Ibrahim told about the Plaintiff." (*Id.* at 6.)

6

Retaliation, though not expressly referred to in the Constitution, is actionable because retaliatory actions may tend to chill an individual's exercise of First Amendment rights. *Perry v. Sindermann*, 408 U.S. 593, 597, 92 S. Ct. 2694, 33 L. Ed. 2d 570 (1972). To state a *prima facie* case for retaliation prohibited by the First Amendment, the plaintiff must establish that: 1) he engaged in protected conduct; 2) an adverse action was taken against him that would deter a person of ordinary firmness from continuing to engage in that conduct; and 3) a causal connection exists between the first two elements. *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999).

Thomas states he wrote numerous kites against Deputy Ibrahim. (Doc. No. 1, at 5.) Filing a grievance against prison officials is conduct protected by the First Amendment. *Hill v. Lappin*, 630 F.3d 468, 472 (6th Cir. 2010); *Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000). Filing frivolous grievances, however, is not protected conduct. *Hill*, 630 F.3d at 472. Thomas has not provided any information about the contents of his kites. Thus, the Court is unable to determine if his grievances amount to protected conduct capable of sustaining a retaliation claim.

The plaintiff next must allege facts which, if proven, demonstrate that the adverse action taken against him was "capable of deterring a person of ordinary firmness" from exercising the constitutional right in question. *Bell v. Johnson*, 308 F.3d 594, 606 (6th Cir. 2002). Certain threats or deprivations are so *de minimis* that they do not rise to the level of being constitutional violations. *Id.* Here, Thomas alleges several potential adverse actions. First, he alleges that Ibrahim engaged in name-calling. (Doc. No. 1, at 5.) Name-calling is a *de minimis* action that does not violate the constitution. *See Bell v. Johnson*, 308 F.3d 594, 606 (6th Cir. 2002) (explaining that "harmless name-calling" does not violate the constitution) (citation omitted). Therefore, this allegation cannot provide the foundation for a retaliation claim.

Thomas's remaining allegations fail to give rise to a retaliation claim because he does not plead facts that suggest any connection between the kites he wrote and Deputy Ibrahim's later actions. Thomas alleges that Ibrahim performed "numerous cell searches" and punished him for keeping extra uniforms that he claims are medically permitted. (Doc. No. 1, at 5–6.) But even if cell searches and punishment for uniforms are adverse actions capable of giving rise to a claim for retaliation, Thomas still must show that the actions Ibrahim took against him were motivated, at least in part, by his writing kites. *Siggers–El v. Barlow*, 412 F.3d 693, 699 (6th Cir. 2005). Here, Thomas's complaint undoubtedly fails to meet that standard. Thomas states that his cell was searched numerous times and he was disciplined for having too many uniforms when the medical department had approved them. (Doc. No. 1, at 5–6.) He does not allege any facts to connect these actions to Ibrahim. There is no suggestion that Ibrahim ordered the cell searches or conducted the cell searches without authorization or orders from his superiors. Thomas also gives no indication that his cell was the only cell that was searched. In short, nothing is alleged to connect Thomas' writing of kites and Ibrahim's decision to search his cell. Thus, Thomas fails to allege facts to suggest that Ibrahim's actions were retaliatory.

Thomas' allegation that Ibrahim punished him for keeping excess uniforms fares no better. Thomas acknowledges that he had more uniforms than regulations permitted and that this would normally be a conduct violation. (*Id.*) He contends that he had approval from the medical department to have additional uniforms; however, he does not allege facts suggesting that Ibrahim knew of the medical approval. He also does not allege that Ibrahim made the decision to send him to segregation. Again, Thomas has not pled facts that connect the writing of kites to the discipline he received for keeping additional uniforms. Accordingly, Thomas fails to state a claim for retaliation against Ibrahim.

8

Finally, although Thomas mentions Sargent Graham in the body of the complaint, he alleges only that Graham apologized to him. (*Id.* at 6.) He gives no indication of what constitutional right Graham's apology might have violated, and none is apparent on the face of the complaint. For these reasons, any claims against Graham in his individual capacity are also dismissed.

### 2. *Official Capacity*

Thomas also fails to state a claim against Mahoning County. He does not identify an ordinance enacted by the County that led to the conditions to which he objects. Nor does he allege facts suggesting that the conditions were the result of an official custom of Mahoning County, as opposed the actions of individuals working within the MCJC. An official capacity claim cannot prevail without any allegation that the defendant was acting according to a policy or custom. *Monell*, 436 U.S. at 690–91. As a result, Thomas's claims against the defendants in their official capacities must be dismissed.

### B. Conditions of Confinement

Thomas identifies eight general conditions in the jail to which he objects, namely: (1) cell intercoms not working; (2) no fire drills; (3) toilets not flushing properly; (4) nightly lockdowns; (5) no outdoor recreation; (6) showers not properly cleaned; (7) no water filtration system; and (8) overcrowding. (Doc. No. 1, at 4–8.) He does not identify any constitutional right he believes these actions violate. The Court liberally construes these claims as arising under the Fourteenth Amendment Due Process Clause. For the purposes of this opinion, the Court will address these claims in three groups. First, the Court will consider the conditions pertaining to plaintiff's recreation and lockdowns. The Court will then discuss the conditions related to hygiene and sanitation, including complaints of toilets not flushing properly, lack of water filtration, and

9

improper cleaning practices. Finally, the Court will address the conditions related to safety, namely the broken intercoms, overcrowding, and lack of fire drills.

"The Constitution 'does not mandate comfortable prisons[.]'" *Farmer v. Brennan*, 511 U.S. 825, 832, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994) (quoting *Rhodes v. Chapman*, 452 U.S. 337, 349, 101 S. Ct. 2392, 2400, 69 L. Ed. 2d 59 (1981)). Only claims of "extreme deprivations" that deny a prisoner "the minimal civilized measure of life's necessities" are sufficient to state a claim. *Hudson v. McMillian*, 503 U.S. 1, 8–9, 112 S. Ct. 995, 117 L. Ed. 2d 156 (1992) (internal quotation marks omitted).

The requirements for a pretrial detainee's claim for conditions of confinement include both a subjective and an objective component. *See Brawner v. Scott Cnty.*, 14 F.4th 585, 596 (6th Cir. 2021) (citation omitted). First, the plaintiff must set forth facts sufficient to allege that he was held under conditions which posed an objectively and sufficiently serious threat to his health and safety. *Id.* at 596–97. Second the plaintiff must allege facts indicating that each defendant "acted deliberately (not accidentally), [and] also recklessly 'in the face of an unjustifiably high risk of harm that is either known or so obvious that it should be known.'" *Helphenstine v. Lewis Cnty., Kentucky*, 60 F.4th 305, 317 (6th Cir. 2023) (quoting *Brawner*, 14 F.4th at 596) (additional citation omitted).

### 1. Recreation and Lockdowns

Thomas' claims that he was denied outdoor recreation and put on nightly lockdowns do not satisfy the objective component of this inquiry. There is no applicable precedent requiring any minimum amount of outdoor recreation for prisoners. *Kizer v. Robertson Cnty.*, No. 3:17-cv-715, 2018 WL 2164557, at *1 (M.D. Tenn. May 10, 2018) (citing *Argue v. Hofmeyer*, 80 F. App'x 427, 430 (6th Cir. 2003)). Instead, the Constitution is violated only when there is "a total or near-total

deprivation of exercise or recreational opportunity, without penological justification . . . ." *Rodgers v. Jabe*, 43 F.3d 1082, 1086 (6th Cir. 1995) (citation omitted).  Thomas does not allege that he was denied recreation and exercise.  He alleges only that it did not take place outdoors. (*See* Doc. No. 1, at 6.) This claim does not rise to the level of a "total or near-total deprivation" of opportunities for recreation.

Similarly, "lockdowns . . . do not impose a significant hardship, nor are they atypical discipline for prisoners." *Clark v. Watson*, No. 1:14-cv-322, 2015 WL 4068034, at \*4 (E.D. Tenn. July 2, 2015) (citing *Sandlin v. Conner*, 515 U.S. 472, 484, 115 S. Ct. 2293, 132 L. Ed. 2d 418 (1995)). Thomas does not allege any facts indicating that these lockdowns imposed a hardship beyond that typically expected and allowed. For these reasons, he fails to allege a plausible claim for lack of outdoor recreation and use of nightly lockdowns.

### 2.  *Hygiene and Sanitation*

Second, Thomas alleges a variety of claims regarding hygiene and sanitation practices at the MCJC. He claims that staff at the MCJC dilute cleaning products in the laundry and shower facilities, that the showers and laundry facilities are nor properly cleaned, and that the toilets in inmates' cells back up. (Doc. No. 1, at 7.) These conditions do not present health threats, but rather suggest conditions which at best are uncomfortable. Temporary loss of working toilets is not sufficiently serious to give rise to a claim. *Dellis v. Corr. Corp. of Am.*, 257 F.3d 508, 511 (6th Cir. 2001) (finding that being deprived of a working toilet was only a "temporary inconvenience[] and did not demonstrate that the conditions fell beneath the minimal civilized measure of life's necessities as measured by a contemporary standard of decency") (citing *Rhodes*, 452 U.S. at 347). Nor do allegedly unclean showers, even showers containing black mold, present a sufficiently serious health threat. *Rogers v. MacLaren*, 1:20-cv-263, 2020 WL 3481541, at \* 7 (W.D. Mich.

11

June 26, 2020) (collecting cases for the proposition that the presence of black mold is not sufficiently serious to give rise to a claim under the Eighth Amendment). This is especially so where, as here, the plaintiff does not point to any medical problems resulting from these violations. *Id.* Therefore, Thomas has failed to state a claim as to any sanitary conditions at the MCJC.

### 3. Overcrowding and Safety

Finally, Thomas alleges that the facility is overcrowded and understaffed, but he does not elaborate on these terms. (*See* Doc. No. 1, at 8.) Those conditions in and of themselves do not rise to the level of a constitution violation. *Rhodes*, 452 U.S. at 347; *see also Agramonte v. Shartle*, 491 F. App'x 557, 560 (6th Cir. 2012) ("[O]vercrowding is not, in itself, a constitutional violation[.]"). While Thomas does allege that overcrowding has led to an increase in violence in the MCJC, he does not allege that he personally experienced violence, nor does he offer any explanation of what he considers to be a "high number" of assaults. (Doc. No. 1, at 8.) A party must assert his own legal rights and interests, and he cannot rest his claim to relief on the legal rights or interests of third parties. *Warth v. Seldin*, 422 U.S. 490, 499 (1975); *Allstate Insurance Co. v. Wayne County*, 760 F.2d 689, 693 (6th Cir. 1985).  The fact that Thomas may be collaterally affected by the adjudication of another inmate or staff member's rights does not extend the Court's Article III powers to him.  *Allstate Insurance Co.*, 760 F.2d at 692.

Nor does Thomas allege that he suffered any harm or risk of harm as a result of some cells having dysfunctional intercom systems. (*See* Doc. No. 1, at 4.) Standing alone, the lack of an intercom system in a plaintiff's cell does not amount to a constitutional violation. *Lowry v. Sutterfield*, No. 3:20-cv-3037, 2020 WL 2950358, at *2 (W.D. Ark. June 3, 2020) (collecting

cases). Plaintiff has not alleged any harm caused by the lack of an intercom. This claim fails as a result.

As to the alleged lack of fire drills, the Sixth Circuit has recognized that fire safety violations exist on a continuum, not all of which rise to a constitutional violation. *Hadix v. Johnson*, 367 F.3d 513, 528 (6th Cir. 2004). An allegation that the facility does not perform regular fire drills is not by itself sufficient to allege a constitutional violation. *Stewart v. Davis*, No. 2:11-cv-689, 2011 WL 4383662, at *4 (S.D. Ohio Sept. 19, 2011) (collecting cases). Again, Thomas has not alleged any facts that would indicate that he was harmed by the lack of fire drills at the MCJC. (*See* Doc. No. 1, at 4–5.) Thus, this claim also fails.

## IV.   CONCLUSION

For all the foregoing reasons, this action is dismissed pursuant to 28 U.S.C. § 1915(e). The Court further certifies, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this decision could not be taken in good faith.

**IT IS SO ORDERED**.

Dated: May 1, 2024

**HONORABLE SARA LIOI**
**CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**